NATIONAL LABOR RELATIONS BOARD

v.

INTERNATIONAL LONGSHOREMEN'S AND WAREHOUSEMEN'S UNION et al.

No. 13183.

United States Court of Appeals Ninth Circuit.

Feb. 11, 1954.

582

George J. Bott, Gen. Counsel, David P. Findling, Assoc. Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Washington, D. C., Fannie M. Boyls, Robert G. Johnson, Attys. N. L. R. B., Washington, D. C., for petitioner.

Gladstein, Andersen & Leonard, Lloyd E. McMurray, San Francisco, Cal., for respondents.

Before DENMAN, Chief Judge, and BONE and POPE, Circuit Judges.

DENMAN, Chief Judge.

The International Longshoremen's and Warehousemen's Union (hereafter the International) and Local 10 thereof (hereafter the Local) petition for a review of an order of the National Labor Relations Board (hereafter the Board) requiring them to cease and desist from the unfair labor practices found and from in any manner causing or attempting to cause employers to discriminate against employees and from restraining or coercing employees in the exercise of their rights guaranteed under Section 7 of the Labor Management Relations Act, 29 U.S.C.A. § 157 (hereafter the Act), and to notify the employers that they have no objection to the hiring of the complainants and to make the complainants whole for loss of pay due to the discrimination against them. The posting of the usual notices was also required. The Board has filed a cross petition seeking enforcement of the order.

Stafford and Sorce, the complainants before the Board, were members of the Local. They had been periodically assigned work through the San Francisco hiring hall pursuant to a contract between the Unions and the Pacific Maritime Association (hereafter the Employ-

ers), formerly the Waterfront Employers' Association.[1]

The pertinent contract provisions are as follows: Control of the hiring hall is vested in a Port Labor Relations Committee (hereafter the Committee), composed of equal numbers of employer and labor representatives. Expenses are paid equally by each of the two groups. Personnel are appointed by the Committee except for the dispatchers who are selected by the International by means of elections.[2] These dispatchers are subject to removal by the Committee for cause. The business of the hall is chiefly the dispatching of registered longshoremen upon request of the Employers, who are required to obtain all longshore help through the hall. Preference is granted first to registered longshoremen who are members of the Local, second to non-union registered longshoremen, and third to non-registered longshoremen.

Stafford was expelled from the Local on June 1, 1949, because of alleged violations of hiring hall rules. At a meeting of the Committee, the Employer members did not vote with the Union members for removal of Stafford from the registration lists and a deadlock ensued. Thereafter, the dispatchers refused to send Stafford out in his regular turn because he was no longer a union member. The situation with regard to Sorce is very similar. He was expelled from the union for reasons other than non-payment of dues, the Employers' members of the Committee refused to vote for his removal from the registration lists, and the dispatchers refused to send him out in his regular turn because he was no longer a union member.

Based upon the above, the Board made a finding that "the dispatchers' refusal to dispatch Stafford and Sorce constituted unlawful discrimination by the Employers," that the Local had prompt-

ed the discriminatory action against the men and thus had violated Section 8(b) (2) and 8(b)(1)(A) of the Act, 29 U.S. C.A. § 158(b) (1) (A), (2), and that the International, by delegating responsibilities under the contract to the Local was also guilty of violating these sections; and the Board issued its order.

The questions raised by the unions are: (1) whether the employer is a necessary party where a labor organization is charged with violating Section 8(b) (2) of the Act; (2) whether a labor organization is guilty of violating either Section 8(b)(2) or Section 8(b)(1)(A) of the Act where it has prevented an employee from working by depriving him of union membership for reasons other than a " * * * failure to tender the periodic dues * * * uniformly required as a condition of * * * retaining membership * * *."[3] and (3) whether, where the International's duties and rights under the contract were delegated to the Local, the International may be held liable for the Local's wrongdoing.

The Supreme Court has recently held that the employer is not a necessary or indispensable party to a Board proceeding such as is involved here. To the same arguments as were made here, the Supreme Court stated: "We find no support for these arguments in the Act. No such limitation is contained in the language of § 8(b)(2). That section makes it clear that there are circumstances under which charges against a union for violating the section must be brought without joining a charge against the employer under § 8(a) (3), for attempts to cause employers to discriminate are proscribed. Thus a literal reading of the section requires only a showing that the union caused or attempted to cause the employer to engage in conduct which, if committed, would violate § 8(a)(3)." Radio Officers' Un-

---

1. The Board has conceded that the legality of neither the hiring hall system nor the contract is questioned in this proceeding.

2. While the contract's terms impose many

duties upon the International, in practice these duties were performed by the Local.

3. Act, § 8(b) (2).

ion v. N. L. R. B., 74 S.Ct. 323, 342; see also, National Licorice Co. v. N. L. R. B., 309 U.S. 350, 363, 60 S.Ct. 569, 84 L.Ed. 799; N. L. R. B. v. Newspaper & Mail Del. Union, 2 Cir., 192 F.2d 654, 656–657.

■ The unions contend that they are not guilty of violating Section 8(b)(2) because they had not caused the Employers to discriminate against Stafford and Sorce. They base this contention upon the fact that the ultimate agent of the discrimination was the dispatcher, a joint agent of the Employers and the unions. The language used by the Board was that the unions had "successfully prompted the discriminatory action against Stafford and Sorce." While the dispatchers were subject to the removal power of the Committee, which was composed of both union and Employers members, they were chosen by the membership of the unions; and, as the record clearly indicates, they followed the mandate of the unions and not that of the employers. The unions, by ordering the dispatchers not to send Stafford and Sorce out on jobs, were clearly the cause of the Employers' refusing to hire these men. See International Brotherhood v. N. L. R. B., 2 Cir., 181 F.2d 34, 38.

The unions then argue that they are protected by the provisions of Section 8(c), in that the Local's instructions to the dispatchers were mere expressions of views, etc., which contained no threat of reprisal or force or promise of benefit. This contention ignores the implied threat which was present—if the dispatchers did not obey they were subject to union discipline; the Employers were bound to hire only through the hiring hall; and any attempt on their part to hire Stafford or Sorce outside of the hall would have resulted in union trouble. The inference that the instructions to the dispatchers caused the Employers to discriminate against Stafford and Sorce is a reasonable inference, and one within the power of the Board to draw. See Radio Officers' Union v. N. L. R. B., supra.

■ The Board also found that the actions of the unions resulted in a violation of Section 8(b)(1)(A), providing that "It shall be an unfair labor practice for a labor organization or its agents —(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 7: *Provided,* That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein" [74 S.Ct. 325]. Section 7 guarantees the employee the right to refrain from all concerted activities. The unions have deprived Stafford and Sorce of their union membership and thereby of their preferred status in the hiring hall. By this means the unions deprived these men of the right to bargain individually for jobs as longshoremen since the Employers are required by the contract to hire only through the hiring hall.

■ Finally, the International argues that it should not be held liable for these violations since all actions were those of the Local to whom the International had delegated all of its responsibilities and rights under the contract. It relies upon Boeing Airplane Co. v. Aeronautical Industrial Dist. Lodge No. 751, D.C.W.D.Wash., 91 F.Supp. 596, affirmed 9 Cir., 188 F.2d 356, where it was held that where a collective bargaining agreement was entered into by the employer and both the local and international unions, the obligations imposed by the contract would be construed as imposing several and not joint and several obligations so that a breach by the local union imposed no liability upon the international union. The situation involved here is not one of breach of contract, but rather one of tort—Stafford and Sorce have been injured by the wrongdoing of others. It is a general principle of agency law that a principal is liable for the torts of his agent which were committed while the agent was acting within the scope of his authority. See 2 Am.Jur. 278. The International had delegated its responsibilities under the contract to the Local, and the Local's

actions were within the scope of the delegation. Therefore, the International is liable for the Local's actions.

The petition for review is denied and the Board's petition for enforcement of its order is granted.