**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LOCAL 176, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, AFL-CIO, et al., Respondents.**

No. 5514.

United States Court of Appeals
First Circuit.

March 30, 1960.

---

1. See "Disposition of Judicial Business" by Chief Judge Sylveter J. Ryan, D.C.S.D.N.Y., 24 F.R.D. 373.

Rosanna A. Blake, Attorney, Washington, D. C., with whom Stuart Rothman, General Counsel, Thomas J. McDermott, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, and Nancy M. Sherman, Attorney, Washington, D. C., were on brief, for petitioner.

Jeremiah C. Lynch, Jr., Newport, R. I., with whom Cornelius C. Moore and Salvatore L. Virgadamo, Newport, R. I., were on brief, for respondents.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

This is a petition for enforcement of an order of the National Labor Relations Board. The charging party was Dimeo Construction Company, of Providence, Rhode Island, hereinafter called the Company. The respondents are Local 176, United Brotherhood of Carpenters and Joiners of America, AFL-CIO, and one Fournier, business agent of the Local, who, on the evidence, was its responsible representative. The Board has determined that the respondents violated sections 8(b) (1) (A) and (2) of the Labor Management Relations Act, 29 U.S.C.A. § 158(b) (1) (A), (2), by maintaining an unlawful oral agreement with the Company, in connection with a high-school-construction project in Newport, Rhode Island, requiring clearance from the Local in order to obtain employment with the Company, and by causing or attempting to cause the Company to discriminate against one Johnson in violation of section 8(a) (3) of the Act. No question of jurisdiction, either of the Board or of this court, is raised.

We wish to note at the outset that our decision of this case has been made unnecessarily difficult by the manner in which the Board and the trial examiner have set forth their findings of fact and their conclusions. The Board made no underlying findings of evidentiary fact, as such, but simply "adopted" the "findings and conclusions" of the examiner. We are therefore set back to the examiner's report for whatever such findings there are in the case. This report is filled with lengthy accounts of the testimony of certain witnesses, and of what other witnesses said in contradiction, but usually without specific resolution of the conflicts. In some instances we are left to infer, and in others we are unable even to guess, just what the examiner found. Similar difficulty attends the ultimate findings of the Board.

Counsel for the Board has argued that it made alternative findings respecting the unlawful nature of the hiring agreement. One contention is that the Board found that the union maintained an oral agreement with the Company requiring job clearance from the union as a prerequisite to employment, and that this constitutes a *per se* violation of the Act for the reasons set forth in its decision in Mountain Pacific Chapter of the Associated General Contractors, 1958, 119 N.L.R.B. 883, without regard to whether or not it was a term of the agreement that preference be given to union members, and without regard to whether or not such preference was actually made in operation. We agree that the Board so found. We can not agree that the Board alternatively found that it was in fact a term of this agreement that union members were to receive preferential treatment in receiving clearance, and we do not approach the case in those terms.[1]

In Mountain Pacific the Board held that, without regard to actual operation thereunder, an exclusive-union-hiring-hall agreement was discriminatory within the meaning of section 8(a) (3), that is to say, it "encourage[s]  *  *  *

1. See note 3, infra. It therefore becomes necessary to excise from the posted no-
tice prepared by the Board the reference to preferential treatment.

[union] membership," unless the agreement explicitly provided: (1) that selection of applicants shall be on a non-discriminatory basis, and not affected in any way by union membership; (2) that the employer retains the right to reject any applicant referred by the union; and, (3) that the parties to the agreement post notices advising applicants for employment of the manner in which the hiring hall will select. The Court of Appeals refused to enforce the order. N. L. R. B. v. Mountain Pacific Chapter of Associated General Contractors, Inc., 9 Cir., 1959, 270 F.2d 425.[2] On the other hand, in Local 357, International Brotherhood of Teamsters, etc. v. N. L. R. B., D.C.Cir., 275 F.2d 646, a divided court upheld such an order.[3]

The basis of the court's decision in Mountain Pacific is not altogether clear. Essentially, the position of the court was that this was a change of attitude on the part of the Board, which had previously regarded exclusive hiring halls as permissible provided that no actual discriminatory selection was made of applicants. Continuing the court seemed to feel that the Board was using the union's failure to post notices as some evidence that it was selecting applicants inequitably, or as a substitute for evidence of actual misconduct. The court indicated there was no rational basis for such an inference, or at least that it

should not be applied retroactively without notice, and that the Board was, in effect, shifting the burden to the union to show that it was not in fact discriminating.

We think the court overlooked what seems to us the real basis of the decision. The inference drawn by the Board was not that union hiring halls are presumptively operated in a discriminatory manner, but, rather, that the applicant for employment will so believe, and govern his conduct accordingly. In our opinion the Board could well conclude that an applicant who must be "cleared" for a job by a union hiring hall will fear that his opportunity of selection will be small if he does not become a union member, in view of the widely-accepted belief (often encouraged by unions themselves) that hiring halls do operate in a discriminatory manner, and in view of the difficulties facing the applicant if he chooses to enforce his rights (well illustrated in the factual situation in the Mountain Pacific case itself). The Board might further conclude that this apprehension would be materially lessened if there were posted at the hiring hall a notice outlining the exact, non-discriminatory methods by which selection would be made. In other words, the Board was finding that without such, an exclusive hiring hall constitutes undue encouragement of union membership. This

**2.** In Morrison-Knudsen Co., Inc. v. N.L.R.B., 9 Cir., 276 F.2d 63, the court reaffirmed this decision, citing our case of N.L.R.B. v. International Association of Heat and Frost Insulators and Asbestos Workers, AFL–CIO, 1 Cir., 1958, 261 F.2d 347. For reasons developed herein, we believe this an undue extension of that case.

**3.** In Morrison-Knudsen Co., Inc. v. N.L.R.B., 2 Cir., 275 F.2d 914, the court did not consider the Mountain Pacific doctrine, since the Board had also found that the agreement involved "actually imposed discriminatory conditions of referral." 123 N.L.R.B. No. 12. This finding was in part based on an instance in which a non-union applicant was refused a work permit on the ground that there were union members out of work, and that the union men "had to come

first." It is clear from other evidence that this meant that the non-union man was moved back on the list as new union members applied for jobs. The evidence in the case at bar involving Johnson, on which counsel for the Board has based its argument of actual discrimination, is much less conclusive. It may well be that Johnson was merely told to wait his turn on the out-of-work list. If there is to be a hiring hall at all, obviously there must be some operating rules. Merely taking applicants on the basis of order of applications does not seem to us discriminatory. See Morrison-Knudsen Co., Inc. v. N.L.R.B., 9 Cir., 276 F.2d 63, where it is said, "There is nothing impermissible about an arrangement which would fairly provide for protecting the men who had been standing in line the longest." The examiner's findings as to preference here had no greater foundation.

inference would not be rebuttable by proof that the union's operation of the hall involved no discrimination in fact. See Local 357, International Brotherhood of Teamsters, etc. v. N. L. R. B., supra. This was not a shifting of the burden of proof. It was simply a modification of the Board's views, in the continuing development of its expertise, as to undue encouragement. If this determination of the Board was retroactive, it was no more so than whenever a court of law decides, on further consideration, to modify earlier views. We hold that the Board must be supported.[4]

Turning to the particular violation in this case, there was ample evidence warranting the Board's finding that there was a tacit agreement that all employees would have to obtain job clearance from the union. Admittedly, the safeguards deemed requisite in Mountain Pacific were not met. Since the agreement requiring clearance was accordingly unlawful, it also follows that the union committed an unfair labor practice when it attempted to cause the Company not to hire Johnson by refusing to clear him. Local Union No. 85, Sheet Metal Workers' International Association, AFL-CIO, 1958, 122 N.L.R.B. No. 79, enforced in part N. L. R. B. v. Local Union No. 85, etc., 5 Cir., 274 F.2d 344.

In its final order the Board applied its "Brown-Olds" remedy of disgorgement of dues,[5] requiring the union to refund to every member who had obtained employment on the Company project the dues which he had paid. Such an order was enforced in N. L. R. B. v. Local 60, United Brotherhood of Carpenters and Joiners of America, AFL-CIO, 7 Cir., 273 F.2d 699. In other recent cases, involving either employers, or unions, the courts have regarded such orders as punitive, unrelated to the purposes of the Act, and a windfall to the employees. The most recent, collecting others from the District of Columbia, 3d, 5th and 9th Circuits, is Building Material Teamsters, Local 282, International Brotherhood of Teamsters, etc. v. N. L. R. B., 2 Cir., 275 F.2d 909.

 We do not reach this question in the setting of a conscious violation of the Act by respondents. In view of the fact that their conduct was recognized as unlawful only after it had occurred, and the Board had adopted its Mountain Pacific doctrine, a disgorgement order would seem to us to be an ex post facto penalty.

A decree will enter enforcing the order of the Board, except to the extent inconsistent with this opinion.

---

4. Subsequent to the Board's decision in Mountain Pacific, Congress liberalized section 8 of the Labor Management Relations Act with respect to hiring agreements in the building and construction industry by adding section 8(f), 73 Stat. 545, 29 U.S.C.A. § 158(f). The amendment is in no way inconsistent with the Board's rule, and in fact affirmative Congressional approval might be inferred from the statement in the Conference Report that, "Nothing in such provision is intended to restrict the applicability of the hiring hall provisions enunciated in the Mountain Pacific case * * *." H.R.Rep. No. 1147, 86th Cong., 1st Sess. 42 (1959), U.S.Code Cong. & Adm.News, 1959, p. 2514.

5. Plumbers and Pipefitters Local 231 (Brown-Olds Corp.) 1956, 115 N.L.R.B. 594.