NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

INTERNATIONAL ASSOCIATION OF MACHINISTS, AERONAUTICAL INDUSTRIAL DISTRICT LODGE 727 and Local Lodge 758, AFL-CIO, Respondents.

No. 16564.

United States Court of Appeals Ninth Circuit.

June 4, 1960.

Rehearing Denied July 11, 1960.

Stuart Rothman, Gen. Counsel, Thomas J. McDermott, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Frederick U. Reel, Alfred Avins, Attys., N. L. R. B., Washington, D. C., for petitioner.

Plato E. Papps, Bernard Dunau, Washington, D. C., for respondents.

Before CHAMBERS and STEPHENS, Circuit Judges, and MATHES, District Judge.

MATHES, District Judge.

The National Labor Relations Board invokes the jurisdiction of this Court under § 10(e) of the National Labor Relations Act [29 U.S.C.A. § 160(e)] to enforce an order of the Board directing respondents to cease and desist from certain alleged unfair labor practices. See 29 U.S.C.A. § 151 et seq., as amended by 61 Stat. 136 (1947).

Stated briefly, the facts are these. Menasco Manufacturing Company, a California corporation, is engaged in the manufacture of airplane parts and, moreover, is engaged in commerce within the meaning of § 2(6) of the Act. 29 U.S.C.A. § 152(6). The company is divided into several units. Each unit may be represented from time to time by a different union as bargaining agent, while some units may have no such representative at all. The units concerned in this case are the "production" unit, whose bargaining representative is the respondent union, the International Association of Machinists, Aeronautical Industrial District Lodge 727 and Local Lodge 758, AFL-CIO (hereinafter "IAM"), and the "engineering" unit, whose bargaining representative is Local 183, American Federation of Technical Engineers, AFL-CIO (hereinafter "AFTE"). Both the IAM and the AFTE are labor organizations within the meaning of § 2(5) of the Act. 29 U.S.C.A. § 152(5).

Menasco and the IAM entered into a collective bargaining agreement effective as of July 2, 1956, for a two-year period. Insofar as pertinent here, the agreement provided that employees of the production unit who transferred to unrepresented units within the company would retain seniority in the production unit as of the date of hire; while employees of the production unit who transferred to union-represented units would have seniority only from the date of their return to the production unit. The agreement further provided, however, that IAM and the company could, by "mutual agreement", restore seniority as of the date of hire to any employee returning to the production unit from an unrepresented unit, and that such returning transferees could "bump" employees within the production unit with less than the restored-by-mutual-agreement seniority.

The collective bargaining agreement presently in effect between Menasco and IAM contains provisions substantially identical to those just summarized from the 1956 contract.

Three Menasco employees, James S. Gibbs, James A. Madison and Triness F. Light, were employed in the production unit and were members of the respondent union when, during 1955 and 1956, the company extended "bids" to its employees for jobs in the engineering unit. These three men applied for such jobs, and were accepted and transferred from the production to the engineering unit. Following this transfer, all three became members of AFTE, the engineering unit's bargaining representative. Both Gibbs and Madison had begun working for Menasco in the production unit in 1948, while Light had begun his employment in 1952.

On March 11, 1958, Menasco gave all three a written notice of layoff. The notice stated that the layoff was "[due] to a reduction in force * * *." On March 14, 1958, the three men were laid off from their jobs in the engineering unit. The evidence in the record shows, and the Board found, that at the time of layoff both Gibbs and Madison had greater company-wide seniority than other employees presently holding jobs in Gibbs' and Madison's former job classifications in the production unit. Al-

though the record does not disclose whether Light had such seniority in his former job classification, the Board so found, and the fact was conceded upon oral argument.

Within a few days of the effective date of the layoff, Gibbs and Madison met on separate occasions with representatives of Menasco, IAM and AFTE, and requested that the three laid-off employees be allowed to "bump back" into the production unit represented by IAM, i. e., each would replace the man with the least seniority in the particular production-unit job classification to which he would be returning. At these meetings the representative of Menasco took the position that the employer was willing to see the three employees restored to their former seniority and to their former jobs in the production unit, but could do nothing without a request from IAM that they be so restored. The representative of the respondent union took the position that IAM would not be willing to restore seniority to the three employees by "mutual agreement", as provided in the collective bargaining agreement.

Upon application by the three employees to the Board, a complaint against respondents was filed and a notice of hearing thereon was issued. Thereafter a hearing as provided by § 10(b) of the Act [29 U.S.C.A. § 160(b)] was held before a Trial Examiner, whose intermediate report and recommended order charged respondents with a violation of § 8(b) (1) (A) of the Act [29 U.S.C. A. § 158(b) (1) (A)] by reason of maintaining a discriminatory contract with Menasco, as well as a violation of § 8(b) (2) of the Act [29 U.S.C.A. § 158(b) (2)] in causing the employer to discriminate against Gibbs, Madison and Light by denying them employment in violation of § 8(a) (3) of the Act [29 U.S.C.A. § 158(a) (3)].

A three-man board of review, delegated by the Board as provided in § 3(b) of the Act [29 U.S.C.A. § 153(b)], agreed with both findings of violation as made by the Trial Examiner. Thereupon the Board issued its order, which *inter alia*

provides that respondents cease and desist from:

"(a) Performing, maintaining or otherwise giving effect to the provisions of any agreement with [Menasco], or any other employer, which unlawfully discriminates with respect to the acquisition, retention or restoration of seniority rights of employees of the said Company or any other employer, or which delegates to the Respondents the right to determine the seniority status of any employee;

"(c) In any other manner, restraining or coercing employees of [Menasco] in the exercise of the rights guaranteed in Section 7 of the Act * * *."

The Board also ordered IAM to consent to restoration of the seniority of Gibbs, Madison and Light, and to make the three employees whole in the manner prescribed by the Board in F. W. Woolworth Co., 90 N.L.R.B. 289, 291–294 (1950).

The essential question before us, upon the Board's petition to enforce this order, is whether the seniority provisions of the IAM-Menasco agreement justify the Board's conclusion that respondents are maintaining a discriminatory contract with the company and, in turn, whether the union practices under the contract in the treatment of Gibbs, Madison and Light violate the Act.

The Board's contention in support of the petition is that the agreement is in violation of the Act because it discriminates against employees by discouraging union membership. Specifically, the Board argues that, by allowing those who transfer to unrepresented units to retain their former seniority with the production unit while refusing the same privilege to those who transfer to represented units within the company, IAM is causing Menasco to discriminate against employees by discouraging both groups of transferees from seeking union representation within their new units as is their right. See 29 U.S.C.A. § 157. In

other words, as the Board views it, the prospective loss or retention of seniority and the correlative privilege of "bumping back" upon layoff from a new unit is a substantial factor in motivating transferees to unrepresented units to maintain the status quo, and in motivating transferees to represented units to seek a change to unrepresented status.

Challenging the validity of the Board's order, respondents contend that the contractual provisions in question neither encourage nor discourage membership in IAM, inasmuch as they apply to all production unit employees, regardless of whether or not they are IAM members. Respondents urge further that loss of seniority is the price an employee should expect to pay for a transfer to what is usually a better job, and that such a loss is, moreover, but a necessary consequence of respondents' duty to protect all employees of the production unit. The Board's reply to respondents' contention is in essence that reinstatement of transferees to their previous seniority by "mutual agreement" of the respondents and the employer in effect gives IAM a "veto power" over such reinstatment, and so may encourage retention of membership in IAM and discourage transferees from seeking or retaining a new union representative.

■ It is well settled of course, as respondents point out, that seniority rights are neither inherent nor constitutional, but rather are created either by statute or by contract. Ford Motor Co. v. Huffman, 1953, 345 U.S. 330, 337–339, 73 S. Ct. 681, 97 L.Ed. 1048; Aeronautical Industrial District Lodge 727 v. Campbell, 1949, 337 U.S. 521, 526–527, 69 S. Ct. 1287, 93 L.Ed. 1513; Trailmobile Co. v. Whirls, 1947, 331 U.S. 40, 52–54, 67 S.Ct. 982, 91 L.Ed. 1328; see: N. L. R. B. v. Wheland Co., 6 Cir., 1959, 271 F.2d 122, 124–125; Colbert v. Brotherhood of R. R. Trainmen, 9 Cir., 1953, 206 F.2d 9, 13.

In formulating provisions as to seniority in collective bargaining agreements, it is inevitable of course that "differences [will] arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected." Ford Motor Co. v. Huffman, supra, 345 U.S. at page 338, 73 S.Ct. at page 686.

■ But while the latitude necessary to allow a union and an employer to negotiate an agreement must as a practical matter be broad enough to permit them to draw distinctions between different classes of employees [see: Intermountain Equipment Co. v. N. L. R. B., 9 Cir., 1956, 239 F.2d 480, 483; N. L. R. B. v. Nash-Finch Co., 8 Cir., 1954, 211 F.2d 622, 625–626, 45 A.L.R.2d 683; Speidel Corp., 120 N.L.R.B. 733, 734–739 (1958); Anheuser-Busch, Inc., 112 N.L.R.B. 686, 687–690 (1955); Daugherty Co., 112 N. L.R.B. 986, 988–989 (1955)], still this latitude is plainly limited by the public policy, expressed in the Act itself, which forbids either union or employer to discriminate against an employee so as to encourage or discourage his membership in a union. 29 U.S.C.A. § 158. It is clear as well that this policy would forbid seniority status being used as a basis for perpetuating any discrimination against employees in violation of the Act. N. L. R. B. v. Local 886, Teamsters Union, 10 Cir., 1956, 235 F.2d 105, 106–107; N. L. R. B. v. Dallas General Drivers, 5 Cir., 1956, 228 F.2d 702, 705–706; N. L. R. B. v. International Brotherhood etc., Local 41, Teamsters Union, 8 Cir., 1955, 225 F.2d 343, 346–348, enforcing order in Pacific Intermountain Express Co., 107 N.L.R.B. 837, 839–840, 844–846 (1954); accord, Local 553, Teamsters Union v. N. L. R. B., 2 Cir., 1959, 266 F.2d 552, 553–554 (dictum).

■ Just as it would be a violation of the Act for an employer to require union approval as a prerequisite to employment [see: N. L. R. B. v. E. F. Shuck Construction Co., 9 Cir., 1957, 243 F.2d 519, 521, 523; N. L. R. B. v. Alaska S. S. Co., 9 Cir., 1954, 211 F.2d 357, 359–360; N. L. R. B. v. International Long-

shoremen's Union, 9 Cir., 1954, 210 F.2d 581, 583–584; Los Angeles-Seattle Motor Express, Inc., 121 N.L.R.B. 1629, 1630–1631 (1958)], so also would the complete delegation to a union by an employer of the task of determining seniority rights be a violation of the Act, unless the criteria established by agreement for union determination of seniority are non-discriminatory, and the union's duties with respect to such determination are merely ministerial. Local 553, Teamsters Union v. N. L. R. B., supra, 266 F. 2d at pages 553–554; see: N. L. R. B. v. Carpenters Local 176, 1 Cir., 1960, 276 F.2d 583, 584–586; N. L. R. B. v. Local 886, Teamsters Union, supra, 235 F.2d at pages 106–107; N. L. R. B. v. Dallas General Drivers, supra, 228 F.2d at pages 705–706; N. L. R. B. v. Local 41, Teamsters Union, supra, 225 F.2d at pages 346–348; Kramer Bros. Freight Lines, Inc., 121 N.L.R.B. 1461, 1463 (1958).

The plain, if not indeed almost irresistible, inference to be drawn with reason from the questioned provisions of the IAM-Menasco agreement is that the contract tends to discourage membership in unions other than IAM by those employees who transfer from the production unit. Respondents urge, however, that there is no intent on their part to discourage union membership and that, aside from the inference drawn, there is no evidence to establish either intent or motive on the part of IAM to discourage membership in other unions.

While motive is often a helpful factor in the determination of state of mind or intent, and especially so where the issue is whether one is guilty of an unfair labor practice, it is permissible to find motive as a result of inference "where encouragement or discouragement can be reasonably inferred from the nature of the discrimination." Radio Officers Union v. N. L. R. B., 1954, 347 U.S. 17, 51, 55–56, 74 S.Ct. 323, 341, 98 L.Ed. 445; see N. L. R. B. v. Business Machine Board, 2 Cir., 1955, 228 F.2d 553, 561 (concurring opinion); see also N. L. R. B. v. Insurance Agents Union, 1960, 361 U.S. 477, 503–506, 80 S.Ct.

419, 4 L.Ed.2d 454 (concurring opinion); Universal Camera Corp. v. N. L. R. B., 1951, 340 U.S. 474, 477–491, 71 S.Ct. 456, 95 L.Ed. 456. If then it may reasonably be inferred from the alleged discriminatory practice in the proceeding at bar that the reasonably-to-be-expected result thereof would be either encouragement or discouragement of union membership, motive and intent may likewise be inferred. "This recognition that specific proof of intent is unnecessary where * * * conduct inherently encourages or discourages union membership is but an application of the common law rule that a man is held to intend the foreseeable consequences of his conduct * * * [and] protestation that he did not intend to encourage or discourage must be unavailing where a natural consequence of his action was such encouragement or discouragement." Radio Officers Union v. N. L. R. B., supra, 347 U.S. at page 45, 74 S.Ct. at page 338.

[5] Here logic compels the conclusion that, as a "natural consequence" of the contractual provisions in question, employees in the production unit would be discouraged from seeking new union representation upon transfer to other units, if the price of such representation were loss of seniority and "bumping-back" privileges within the production unit. Moreover, respondents' attempt to justify the contract on the theory that the first duty of IAM is to protect the interests of the employees within the bargaining unit must fall for want of merit, since the contract clearly provides that some employees, while employed outside the production unit, may retain their seniority within the unit, if only they are working in a unit not represented by a union.

It follows that the Board's finding that IAM is maintaining a contract in violation of § 8(b) (1) (A) of the Act [29 U.S.C.A. § 158(b) (1) (A)] must be upheld; and this result in turn leads to the holding that respondents violated § 8(b) (2) of the Act [29 U.S.C.A. § 158(b) (2)] by causing Menasco to deny employment to Gibbs, Madison and Light

in derogation of § 8(a) (3) of the Act [29 U.S.C.A. § 158(a) (3)].

■ Respondents next advance the contention that, even if guilty of a violation, IAM should not be forced to restore the employees as ordered by the Board, but should be given the option to negotiate with Menasco to strip all seniority rights from all production-unit employees who transfer to other units within the company, upon the condition that if these negotiations fail within sixty days to produce a seniority provision that is not in violation of the Act, then and only then would restoration be required. If, on the other hand, a new provision is agreed upon that is nondiscriminatory, IAM should not be required to restore the employees since, goes the argument, doing away with discriminatory practices should not operate to create or vest rights.

But violation of rights protected by the Act as to the three employees here is now *fait accompli*, and unquestionably it is within the Board's power to order restoration. 29 U.S.C.A. § 160(c); see Phelps Dodge Corp. v. N. L. R. B., 1941, 313 U.S. 177, 189–200, 61 S.Ct. 845, 85 L.Ed. 1271. It is beyond dispute, moreover, that the Act lays upon respondents the plain duty to refrain from discriminatory acts, and future conduct that is lawful cannot purchase relief from liability for past conduct that was not lawful.

■ Finally, respondents attack the Board's order upon the ground that, in light of our opinion in Morrison-Knudsen, Inc. v. N. L. R. B., 9 Cir., 1959, 270 F.2d 864, 865–866, the order is too broad in scope because its prohibitions include coercion "in any other manner", and maintaining similar contracts with "any other employer." In keeping with our holding in the Morrison-Knudsen case, the order must be modified to exclude that part which prohibits coercion "in any other manner", since there is no evidence in the record before us of any other form of coercion by respondents.

Furthermore, since there is no evidence in the record that other similar contracts are now in force with any other employer, the phrase "or any other employer" must also be stricken from the order. Communications Workers v. N. L. R. B., 1960, 362 U.S. 479, 480–481, 80 S.Ct. 838, 840, 4 L.Ed.2d 896; see: May Department Stores v. N. L. R. B., 1945, 326 U.S. 376, 389–392, 66 S.Ct. 203, 90 L.Ed. 145; N. L. R. B. v. Express Publishing Co., 1941, 312 U.S. 426, 435–437, 61 S.Ct. 693, 85 L.Ed. 930.

The order of the Board will be modified by striking from the quoted provisions thereof the phrase "or any other employer" and the phrase "In any other manner", and the order as so modified will be enforced.