### NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

### WHITING MILK CORPORATION et al., Respondents.

### No. 6327.

United States Court of Appeals First Circuit.

Heard Nov. 6, 1964.

Decided Feb. 26, 1965.

Aldrich, Chief Judge, dissented.

Melvin J. Welles, Washington, D. C., with whom Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and George H. Cohen, Atty., N.L.R.B., Washington, D. C., were on brief, for petitioner.

Samuel Leiter, Boston, Mass., with whom Gordon & Leiter, Boston, Mass., was on brief, for Whiting Milk Corp., respondent.

James T. Grady, Boston, Mass., with whom Samuel E. Angoff and Grant, Angoff, Goldman & Manning, Boston, Mass., were on brief, for Milk Wagon Drivers & Creamery Workers Union, respondent.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

WOODBURY, Senior Circuit Judge (by designation).

This proceeding arises out of the contraction of the milk processing and distributing industry in New England caused by a number of acquisitions and mergers with resultant consolidation of routes and reduction of employees.

For many years the respondent Whiting Milk Corporation and the respondent Milk Wagon Drivers and Creamery Workers Union, Local 380, affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, hereinafter Whiting and the Union, respectively, have been parties to a multi-employer contract known as the Milk Industry Agreement. Formerly so also was White Brothers Milk Company but only as to four of its five plants.[1] Its plant in Hyannis, Massachusetts, had never been represented by the Union, or so far as appears, by any other labor organization.

On June 1, 1961, Whiting acquired White Brothers which raised a problem with respect to the seniority rights of White Brothers' Hyannis employees under Clause 81, formerly Clause 70, of the Milk Industry Agreement which in effect provided that in the event of acquisition by a signatory company of another Union company the seniority of the Union employees of the latter carried over into the acquiring company.[2] Whiting decided that under this contract provision White Brothers' non-union Hyannis employees would have to start seniority on the date of acquisition, that is, on June 1, 1961, regardless of their length of service with White Brothers, and the Union, if it did not actively participate in this decision at least acquiesced in it.[3]

At a meeting at the former White Brothers Hyannis plant soon after the acquisition Whiting's personnel manager told the employees of the decision to place them at the bottom of the seniority roster but assured them that there would be plenty of work to go around. And so there was for the better part of a year. In April, 1962, however, lay-offs for lack of work became necessary and among the men laid off were the charging parties, Walsh and O'Neil, from the Hyannis plant. Both men were "bumped" by other former White Brothers employees from other plants of that company who had less seniority in employment but longer Union membership.[4]

Charges were filed by the above named employees over a year after the decision to place them at the bottom of the seniority roster but within six months of the time they were laid off on which General Counsel for the Board issued complaints which were consolidated for trial. The Board after routine procedures agreed with the trial examiner that the lay-offs were compelled by Clause 81 of the Milk Industry Agreement and that that clause of the Agreement was illegal on its face. Wherefore the Board held that the charges were not time-barred by § 10(b) of the Act, 61 Stat. 146, 29 U.S.C. § 160(b), and that Whiting and the Union had violated § 8(a) (1) and (3) and § 8(b) (1) (A) and (2) of the Act, 61 Stat. 140, 29 U.S.C. § 158(a) (1) and (3), (b) (1) (A) and (2), respectively, first, by maintaining and giving effect to the contract seniority system, which the Board said on its face required discrimination against employees because of their prior

1. The record does not disclose but from this fact we must assume that the employee bargaining units were plant and not company.

2. Clause 81 so far as material provides: "If the Company merges with or acquires, by any means, another Union Company, the seniority and category service of those affected by such action shall be deemed to have been established with the entity produced by such merger or acquisition. * * * "

3. In the view we take of the case there is no need to decide the extent of the Union's involvement in the decision.

4. All Whiting employees became Union members after its acquisition of White Brothers as required by a union security clause in the Milk Industry Agreement.

lack of representation by the Union, and, second, by laying off Walsh and O'Neil pursuant to the unlawfully maintained seniority system imposed by the contract. In this proceeding the Board seeks enforcement of its order entered in accordance with its findings and conclusions.

The sole issue as we see it is whether Clause 81 of the Milk Industry Agreement is illegal on its face as held by the Board.

No cases even closely in point have been cited to us and we have found none. We must start, therefore, with the Act although it only sets forth general policies in broad terms leaving to the Board and the courts the difficult task of consistent, reasoned application.

Section 8(a) (1) provides: "It shall be an unfair labor practice for an employer—(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7" which confers upon employees "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." And, of present pertinence, the section also gives employees "the right to refrain from any or all of such activities." Section 8(a) (3) provides that it shall be an unfair practice for an employer "by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization." Section 8(b) (1) (A) imposes on labor organizations correlative obligations to refrain from these unfair labor practices and § 8(b) (2) specifically makes it an unfair labor practice for a labor organization "to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a) (3)."

■ The Board reasoned that Clause 81 was illegal on its face because adherence to its terms caused Whiting and the Union to discriminate against White Brothers' former Hyannis employees with respect to a term of their employment, seniority, thereby encouraging them to seek membership in the Union. Granting, but not necessarily adopting, the Board's argument that Clause 81 by its silence with respect to the seniority of non-union employees of an acquired company necessarily implied that such employees would be given lower, or as here, no seniority in the acquiring company, the flaw we see in the Board's reasoning is the premise that seniority was a term or condition of employment of White Brothers' Hyannis employees. As non-union men they had no seniority rights for that is not an incident of employment, like the right to a reasonably safe place to work. "Seniority arises only out of contract or statute" and "'The seniority principle is confined almost exclusively to unionized industry.'" Trailmobile Company v. Whirls, 331 U.S. 40, 53, 67 S.Ct. 982, 988, 91 L.Ed. 1328 (1947), footnote 21 and authorities cited.

The trial examiner in her report adopted by the Board recognized the contractual source of seniority rights. And she gave lip service to the general proposition that a labor organization has "the right, if not the duty," to get the best bargain it can for those it represents. But she then went on as follows to state the proposition on which the Board ultimately relied:

"The Union's right to obtain a good bargain for those it represents is not, however, without limitations. It may not include in its contract terms which impinge upon the statutorily protected rights of employees whom it does not represent, such as precluding the latter through individual bargaining, or by other means, from obtaining comparable benefits for themselves."

■■ We think this analysis is erroneous. The Hyannis employees of White Brothers whom the Union did not represent had no statutorily protected right to seniority. Whatever rights of that nature they might obtain could only

be acquired by contract.[5] Clause 81 of the Milk Industry Agreement in no way precluded them from acquiring that right by individual bargaining with White Brothers.[6] Nor did Clause 81 deprive the Hyannis men of a theoretical right to bargain individually with Whiting for seniority. At most these men could have bargained for seniority status to commence as of the date of their hiring by Whiting and this is, in fact, exactly what happened.

This is not a case in which the Union bargained for preferential benefits for members of the Union in the unit it represented relegating non-union employees in the unit to an inferior status. See, for example, NLRB v. International Association of Machinists, 279 F.2d 761 (C.A.9), cert. denied, 364 U.S. 890, 81 S.Ct. 221, 5 L.Ed.2d 187 (1960). It is simply a case where the Union bargained for benefits for all employees within the units it represented without at the same time bargaining for similar benefits for employees for whom it had no authority to speak. If this be an unfair labor practice, on the same reasoning so also would it be an unfair labor practice for a union to bargain for an increase in wages for employees in a unit it represented without at the same time bargaining for an increase in wages for employees in a similar unit it did not represent.

The long and short of this case is that the Union bargained for and obtained a benefit for employees in the units it represented. This is not illegal discrimination against employees in other units not represented by the Union but only a normal and natural incident of union representation. Obtaining a benefit for employees may well encourage others to join a union but that side effect does not violate the Act, for "The truth is that the union is a service agency that probably encourages membership whenever it does its job well." Local 357, International Brotherhood of Teamsters, etc. v. NLRB, 365 U.S. 667, 675–676, 81 S.Ct. 835, 840, 6 L.Ed.2d 11 (1961). It follows that Clause 81 of the Milk Industry Agreement does not discriminate against any right possessed by the non-represented Hyannis employees of White Brothers in violation of § 8(a) (1) or (3) or § 8(b) (1) (A) or (2) of the Act.

Taking this view there is no occasion for us to consider whether the charges are time barred by § 10(b) of the Act.

A decree will be entered setting aside the order of the Board.

ALDRICH, Chief Judge (dissenting).

I cannot accept the court's conclusion. It is, of course, true that an employer may grant certain benefits to a represented unit that it does not afford its unrepresented employees. The fact that this may give kudos to the union, and may encourage membership, is not in itself enough to make it illegal. But, equally, it is familiar principle that an employer cannot "discriminate" against non-union employees because of their lack of membership. Definitions may be in order. It seems to me that the cross-over from permissible, incidental, favoring, to direct, unlawful discrimination, occurs when the benefit given the union members is at the expense of the non-members. If there were two units, one, A, represented and the other, B, not, and the employer granted seniority within the unit to the employees in A, and did not in B, the employees in B might feel that the A employees were better off, but they would have no complaint under the Act. A different question would arise if the employees in A were permitted to bump

---

5. We cannot imagine what "other means" there could possibly be.

6. A different situation which we need not consider might be presented had White Brothers' non-union Hyannis employees individually bargained for and obtained "vested" seniority rights which were superseded or cancelled by Clause 81.

Compare Oddie v. Ross Gear and Tool Co., 305 F.2d 143 (C.A. 6), cert. denied, 371 U.S. 941, 83 S.Ct. 318, 9 L.Ed.2d 275 (1962), with Zdanok v. Glidden Co., 288 F.2d 99, 90 A.L.R.2d 965 (C.A. 2, 1961), affirmed on an issue not here relevant, 370 U.S. 530, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962).

employees in B who had been longer with the company than they. It seems to me that this would be unlawful discrimination. Cf. NLRB v. International Ass'n of Machinists, 9 Cir., 1960, 279 F.2d 761, cert. den. 364 U.S. 890, 81 S.Ct. 221, 5 L.Ed.2d 187.

What the court now tolerates seems even more marked. White Brothers' unionized employees newly hired by the respondent Whiting have been given a seniority status not merely inter se, but at the direct expense of those simultaneously employed in the very same unit who were not previously unionized. In my view this is not a case where, to quote the court, the Board has proceeded on the "premise that seniority was a term or condition of employment of White Brothers' Hyannis employees." It was not, and the Board has not said it was. Rather, it wishes to start fresh. It has said that Whiting's new employees cannot have an artificial or carryover seniority with Whiting if they had been union members while working for White, but not otherwise. I see no distinction between using past union status as a means for choosing employees, admittedly improper, cf. Local 357, International Brotherhood of Teamsters, etc. v. National Labor Relations Board, 1961, 365 U.S. 667, 81 S.Ct. 835, 6 L.Ed.2d 11, and using it as the basis for keeping them.

Nor should it be an answer that this was the result of a prior contract which was in precise anticipation of this exact situation. A union's primary duty is to represent all employees in its unit, here Whiting, fairly and alike. Perfection is not always possible. Ford Motor Co. v. Huffman, 345 U.S. 330, 338, 73 S.Ct. 681, 97 L.Ed. 1048. However, the grounds for possible disparity mentioned in Huffman did not include union membership, and a deliberate use of that as a basis, whether by contract or otherwise, seems to me improper. Wallace Corp. v. National Labor Relations Board, 1944, 323 U.S. 248, 255–256, 65 S.Ct. 238, 89 L.Ed. 216; Radio Officers' Union, etc. v. National Labor Relations Board, 1954, 347 U.S. 17, 47, 74 S.Ct. 323, 98 L.Ed. 455.