**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**DISTRICT 23, UNITED MINE WORKERS OF AMERICA,**
**Respondent.**

No. 89–5603.

United States Court of Appeals, Sixth Circuit.

Argued March 9, 1990.

Decided Dec. 13, 1990.

---

**646**

Aileen A. Armstrong, Dep. Asso. Gen. Counsel [COR NTC gvt], Paul Spielberg (argued), Christopher Young, N.L.R.B. Office of the Gen. Counsel, Washington, D.C., Emil C. Farkas, Regional Director, N.L.

R.B., Region 9, Cincinnati, Ohio, for petitioner.

John B. Rayson, Jr. (argued), Kramer, Rayson, McVeigh, Leake & Rodgers, Knoxville, Tenn., C. Terry Earle, Greenville, Ky., for respondent.

Before KENNEDY and RYAN, Circuit Judges, and ALDRICH, District Judge.[*]

ALDRICH, District Judge.

In this action, the National Labor Relations Board (the NLRB or the Board) petitions under Section 10(f) of the National Labor Relations Act (the NLRA or the Act), 29 U.S.C. § 160(f), for enforcement of its March 7, 1989 order that District 23 of the United Mine Workers of America (the UMWA) violated Section 8(b)(2) of the NLRA, 29 U.S.C. § 158(b)(2), by causing Peabody Coal Company to discriminate against an employee by refusing to grant seniority credit for the time that the employee had worked at a non-union mine later acquired by Peabody, a union mine. District 23 opposes the petition, asserting that the Board's ruling was erroneous, and asking that enforcement be denied, or that the case be remanded for further proceedings.

The parties raise three issues: 1) whether Peabody's granting of seniority credit for prior union employment, but not for prior non-union employment, impermissibly discriminated on the basis of union membership; 2) whether substantial evidence in the record supports the Board's finding that District 23 "caused" Peabody Coal Company to impermissibly discriminate on the basis of union membership; and 3) whether Peabody Coal and the United Mine Workers of America, International Union, were indispensible parties, without which the Board could not properly rule.

We find that the method used to credit seniority was not discriminatory, and therefore deny enforcement of the Board's order. Because we find no discrimination, we do not reach the questions of whether Dis-

---

[*] Honorable Ann Aldrich, Judge, United States District Court for the Northern District of Ohio, sitting by designation.

trict 23 "caused" Peabody to make the decision it did, or whether Peabody or the International Union were indispensible parties.

## I.

Dale Martin worked between 1950 and 1956 for Sinclair Coal Company at its Old Homestead mine. He was not a member of any union while on that job, nor was Sinclair a signatory to any UMWA contract. In 1955, Peabody Coal Company bought Old Homestead, and closed it a year later. Peabody was not then a signatory to the UMWA contract. Between 1956 and 1960, Martin was employed only sporadically, and outside the coal industry. He started working for Peabody at its Vogue Mine in 1960, and became a member of the UMWA that same year.

District 23, a regional subdivision of the UMWA International Union, was the authorized bargaining representative of the workforce, including Martin, at the Vogue Mine. Working conditions at that mine came to be governed by the National Bituminous Coal Wage Agreement of 1984 (the NBCWA), a multi-employer agreement approved by the UMWA International Union and the Bituminous Coal Operators Association (the BCOA). This agreement was the successor to agreements previously in force between the international and the coal companies. It contains a successorship clause which, under most circumstances, ensures that the agreement will be binding upon any company that acquires a signatory company while the agreement is in force. Peabody is a member of the BCOA, and thus a signatory employer of the NBCWA.

The NBCWA regulates the order in which employees are laid off from, and then recalled to, work at the many mines and within the various UMWA districts covered by the contract. Article 17(h) of the NBCWA contains the recall provisions which, based on "years of service," rank union members' order of preference for recall to a given job as follows: (1) union members at the same mine; (2) union members employed by the employer in the same UMWA district (here, District 23); and (3) union members employed elsewhere by the employer. Article 17(h) defines "employer" as any signatory to the NBCWA, or any wholly-owned or controlled subsidiary or affiliate of a signatory.

Peabody is a large company that has, over the years, purchased many coal mines. Upon acquisition of a mine with an UMWA-organized workforce, in accord with the NBCWA successorship clause, Peabody credits the mine's employees with their "years of service" at that mine for the purpose of recall seniority with Peabody.[1] Both representatives of District 23 and agents of Peabody Coal understood this seniority credit to apply only upon Peabody's acquisition of an NBCWA signatory company with an UMWA workforce.

Martin continued in Peabody Coal's employ from 1960 until he was laid off in 1985. At that time, Martin's seniority became a matter of dispute. Martin took the position that his seniority for recall purposes should date from 1950 because the Old Homestead mine had been acquired by Peabody. Peabody disagreed and informed Martin that he would not receive credit for his years at the Old Homestead, and that his seniority for purposes of recall dated from his employment at Vogue in 1960, an interpretation with which District 23 concurred. The parties agree that the denial of seniority credit for his time at the Old Homestead adversely affects Martin's recall rights.

Martin filed an unfair labor practice charge against District 23 on January 16, 1986. As a result, the Board issued a

---

1. Article I of the successorship clause provides, in pertinent part:
   This agreement shall be binding upon all signatories hereto, including those Employers which are members of signatory associations, and their successors and assigns. In consideration of the Union's execution of this Agree-
   ment, each Employer promises that its operations covered by this Agreement shall not be sold, conveyed, or otherwise transferred or assigned to any successor without first securing the agreement of the successor to assume the Employer's obligations under this Agreement.

complaint against District 23, alleging that District 23 had violated § 8(b)(2) of the Act by causing, or attempting to cause, Peabody to refuse to recall Martin based on his prior work in a non-union capacity. The administrative law judge (the ALJ) who heard the case in the fall of 1986 noted that the complaint did not challenge the facial validity of the contract provision, and that it brought no charges against either the UMWA International Union or against Peabody.

The magistrate recommended dismissal of the complaint because "... District 23's agreement with Peabody's interpretation of a contract, the validity of which has not been questioned, cannot be said to be a cause, or an attempt to cause, discrimination within the meaning of section 8(b)(2) of the Act."

On appeal, the Board reversed the ALJ, holding that District 23 had indeed committed an unfair labor practice by "maintaining and enforcing" a contractual provision under which Peabody had declined to give Martin seniority credit back to 1950. The Board ordered District 23 to cease and desist from "causing or attempting to cause, an employer to refuse to recall a laid-off employee by maintaining and giving effect to a contract provision which requires discrimination against employees, in terms of their seniority credit, because they worked for a non-union company later acquired by the employer." The Board also ordered District 23 to make Martin whole for any loss of wages and benefits, to notify Peabody of its obligations under the order, and to post notices at various places.

The Board applied to this Court for enforcement of its order. District 23 has cross-appealed for review.

## II.

"With regard to mixed questions of fact and law, courts of appeals are constrained to respect the findings of the Board.... We are not so limited, however, in reviewing purely legal questions." *Rosen v. NLRB*, 455 F.2d 615, 617 (3rd Cir.1972). The relevant facts here, as summarized above, are not in dispute.[2]

Section 8(b)(2) of the Act provides: "It shall be an unfair labor practice for a labor organization or its agents— ... to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) of this section." Section 8(a)(3), in turn, provides: "It shall be an unfair labor practice for an employer— ... by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization."[3]

Neither the complaint, nor the Board's decision, suggest that the provisions of Article I (relative to successorship), or Article 17(h) (relative to the parties' district-wide panel procedure), of the collective bargaining agreement violate the Act. The only issue presented here involves Peabody's computation, in which District 23 concurred, of Martin's seniority.

2. The Board's reliance on an allegedly different "past practice" by Peabody in interpreting the seniority clause in connection with its acquisition of the Gibraltar Mining Company in 1979, is misplaced. Employees at Gibraltar were given seniority credit for the time they had worked there because the UMWA–BCOA contract then in effect required Peabody to do so. There is no evidence that any such contract was in effect at the time Peabody acquired the Old Homestead.

3. The National Labor Relations Act, 29 U.S.C. § 158, provides in relevant part:
(a) It shall be an unfair labor practice for an employer—
      *      *      *      *      *      *
(3) by discrimination in regard to hire or tenure of employment to encourage or discourage membership in any labor organization ...
      *      *      *      *      *      *
(b) It shall be an unfair labor practice for a labor organization or its agents—
      *      *      *      *      *      *
(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) of this section or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership; ...

■ It is axiomatic that seniority rights are not inherent in an employee-employer relationship, but rather, exist only to the extent that they are created by contract. *Oddie v. Ross Gear and Tool Co.,* 305 F.2d 143, 149 (6th Cir.), *cert. denied,* 371 U.S. 941, 83 S.Ct. 318, 9 L.Ed.2d 275 (1962); *NLRB v. Wheland Co.,* 271 F.2d 122 (6th Cir.1959). *See also NLRB v. Whiting Milk Corp.,* 342 F.2d 8 (1st Cir. 1965). "[S]eniority rights derive their scope and significance from union contracts, confined as they almost exclusively are to unionized industry." *Aeronautical Industrial Dist. Lodge 727 v. Campbell,* 337 U.S. 521, 526, 69 S.Ct. 1287, 1289, 93 L.Ed. 1513 (1949). Seniority, then, is properly related to prior union membership, or to employment by a company signatory to a relevant collective bargaining agreement. The computation of seniority is properly based on this concept.

■ As with all union contract terms, seniority provisions arrived at through collective bargaining will be upheld as long as they come within the "wide range of reasonableness ... allowed [to the] statutory bargaining representative," *Ford Motor Co. v. Huffman,* 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953), and comport with the union's fiduciary duty. *Humphrey v. Moore,* 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964). A given seniority plan will therefore be upheld if it is reasonable, and falls within the zone of discretion. *Deboles v. Trans World Airlines, Inc.,* 552 F.2d 1005, 1015 (3rd Cir.), *cert. denied,* 434 U.S. 837, 98 S.Ct. 126, 54 L.Ed.2d 98 (1977).

■ In this case, the relevant seniority clause applies when a signatory employer purchases a mine. The clause requires different treatment of that mine's employees depending on whether that employer had a contract with the union prior to the acquisition. If it did, an employer must credit the employees' time with that employer for seniority purposes. In such cases, the employee retains rights based upon his accrued seniority at the time of the acquisition. *See Teamsters Local Union No. 42 v. NLRB,* 825 F.2d 608, 610 (1st Cir.1987). Conversely, if the employees were not un-

ion members, they receive no such credit. In such cases, the employees have no union contract-based seniority rights, and the UBCWA does not require employers to afford them any.

*Nu–Car Carriers, Inc.,* relied upon by both sides in this case, exemplifies the manner in which a union may distinguish between bargaining unit and non-bargaining unit employees. 187 NLRB 850 (1971), *petition for review denied sub nom. Rosen v. NLRB,* 455 F.2d 615 (3rd Cir.1972). Where a contract permits both union and non-union employees to enjoy a contract benefit, the non-union employees must not be treated in a disfavored manner with respect to that benefit. However, union contracts need not place bargaining unit and non-bargaining unit employees on equal footing vis-a-vis pension plans or any other benefits secured in the bargaining process. As long as the nonunion workers are not in the same bargaining unit, a union may negotiate a contract which, for example, grants them only limited, or no seniority benefits without being discriminatory. *Rosen,* 455 F.2d at 617–18 (citing *Whiting Milk,* 342 F.2d at 8, and *Central States Petroleum Union, Local 115,* 127 NLRB 223 (1960), *aff'd sub nom. International Brotherhood of Boilermakers, etc. v. NLRB,* 288 F.2d 166 (D.C.Cir.), *cert. denied,* 368 U.S. 832, 82 S.Ct. 55, 7 L.Ed.2d 34 (1961)).

It is clear that Peabody's interpretation of the seniority provision at issue here comports with this basic rule. It permits the protection of employees working under a collective bargaining agreement, with expectations of seniority, during a change of mine ownership. Given the recall system set forth in Article 17(h), with its various levels of preference based on mine and district, Peabody's interpretation plainly works a "reasonable" accommodation between the seniority ranks of the pre- and post-acquisition employees.

### III.

We conclude that Peabody's interpretation of the seniority clause is not a discriminatory distinction based on union member-

ship. Because we find that there has been no discrimination under § 8(b)(2), and that the Board's ruling was in error, enforcement is denied. We need not reach the issues of whether District 23 wrongfully caused Peabody to discriminate against Martin, nor whether Peabody Coal and the UMWA International Union were indispensible parties.

Enforcement of the Board's judgment is DENIED.