Gary D. CARR, Daniel L. Christensen, Donald W. Hofmaster, John H. Wagner, Donald L. Wood, Jr., and Brotherhood of Locomotive Engineers, Plaintiffs,

v.

CHICAGO, CENTRAL & PACIFIC RAILROAD, and United Transportation Union, Defendants.

No. 92 C 5943.

United States District Court, N.D. Illinois, Eastern Division.

May 26, 1994.

Stephen Jay Feinberg, Marvin Gittler, Asher, Gittler, Greenfield, Cohen & D'Alba, Chicago, IL, Harold A. Ross, Ross & Kraushaar, Cleveland, OH, for plaintiffs.

Michael David Dabertin, Oppenheimer, Wolff & Donnelly, Chicago, IL, for defendant Chicago Cent. & Pacific R.R.

Robert Earl Harrington, Jr., Patrick Joseph Harrington, Harrington, Thompson, Acker & Harrington, Ltd., Chicago, IL, Norton N. Newborn, Norton N. Newborn Co., L.P.A., Cleveland, OH, for defendant United Transp. Union.

## MEMORANDUM OPINION AND ORDER

MAROVICH, District Judge.

Plaintiffs Gary D. Carr, Daniel L. Christensen, Gary L. Hanson, Donald W. Hofmaster, John H. Wagner, Donald L. Wood Jr., and the Brotherhood of Locomotive Engineers ("BLE") filed a complaint against Defendants Chicago, Central & Pacific Railroad Company ("CCP") and the United Transportation Union ("UTU") seeking declaratory and injunctive relief to prohibit the enforcement of an amendment to a collective bargaining agreement executed between CCP and UTU. On July 30, 1993, this Court stayed ruling on the pending cross-motions for summary judgment until such time as the Seventh Circuit issued an opinion in a nearly identical case, *Dempsey v. Atchison, Topeka and Santa Fe Railway Co.*, 16 F.3d 832 (7th Cir.1994). The Seventh Circuit has now ruled on the issues raised in that case concerning the validity under the Railway Labor Act of a similar side agreement entered into by a rail carrier and Defendant UTU which requires individuals who transfer out of the train service craft to pay a fee or dues to UTU if those individuals wish to continue to accumulate seniority while they are working outside the craft. As the Court realized when it stayed ruling on the pending motions, the *Dempsey* court's opinion is dispositive of many of the issues raised here. For the reasons set forth below, the Court will grant Defendants' motion for summary judgment and will deny Plaintiffs' motion for summary judgment.

## BACKGROUND

Defendant CCP is an interstate rail carrier within the meaning of Section 1 of the Rail-

way Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.* Defendant UTU is a labor organization which serves as the exclusive bargaining representative for the category of employees commonly referred to as the train service craft. The train service craft includes CCP's conductors, brakemen, yardmen and switchmen. Plaintiff BLE is a labor organization which serves as the exclusive collective bargaining representative for the engine service craft which includes CCP's locomotive engineers.

As is common, the collective bargaining agreements between CCP and UTU and between CCP and BLE contained a union shop provision requiring that employees join the union designated as their authorized representative as a condition of continued employment. The agreements also provided that this requirement is satisfied by membership in any other national labor organization organized under the RLA which admits as members employees in the train or engine service crafts. Thus, membership in either UTU or BLE satisfied the union shop provision. Over time, it became common for train service employees to elect to hold membership in BLE even though it is not the designated representative of such employees. The six individual plaintiffs are members of BLE and were working in engine service at the time of this action. Previously, they had worked in train service and hold seniority in both train service and engine service as locomotive engineers.

As in *Dempsey*, a train service employee first obtained seniority through date of hire and thereafter maintained seniority per the collective bargaining agreement. The agreement provided that even when an employee leaves train service crafts for other crafts, such as engine service, the employee would still continue to accrue seniority in train service. Due to agreements made by UTU in 1985, it became increasingly common for railroads to draw upon train service employees for new engine service workers. Thus, a growing number of train service employees accumulated seniority as locomotive engineers under BLE agreements and also continued to accrue seniority as train service employees under UTU agreements.

In 1988, a round of negotiations between the nation's railroads and railway labor organizations took place concerning a reduction in the number of workers required on each train, known as the "crew consist." BLE and UTU participated in these negotiations but CCP did not. After negotiations deadlocked, President Bush appointed Presidential Emergency Board No. 219 to investigate and report its findings on the dispute. The Board recommended that UTU negotiate agreements with individual railroads to reduce the crew consist. To avert a nationwide strike, the Congress, on April 18, 1991, passed Public Law 102–29, 105 Stat. 169, making the Board's recommendations binding.

On June 26, 1992, CCP and UTU entered into a new collective bargaining agreement containing a reduced crew consist provision as per the Board's recommendations. According to Plaintiffs, as a result of the reduction, UTU stood to lose about two-thirds of its train service members or its potential members. As part of the new agreement, CCP and UTU negotiated a change in the rules governing accumulation and retention of seniority by train service employees while working in other crafts.

The amended Rule 55 [1] provides that train service employees who wish to continue accumulating seniority while working in engine

1. Rule 55 provides in pertinent part:

*SENIORITY RETENTION*

(a) Any employee who was promoted and/or transferred to another position from the craft or class represented by the United Transportation Union *on or before* the date of this Agreement, may elect to continue to accumulate seniority within the craft or class represented by the United Transportation Union. Such an employee who elects to continue to accumulate seniority shall have ninety (90) days from the effective date of this Agreement to pay an appropriate monthly fee, not to exceed monthly union dues, to the United Transportation Union. In the event such an employee does not pay the required fees, the General Chairperson shall so notify the designated Carrier Officer with a copy to the employee involved. Such employee whose payments are delinquent shall have sixty (60) days from the date of the General Chairperson's letter to correct the delinquency. Failing to correct the delinquency, he/she shall not continue to accumulate seniority in the craft or class represented by the

service must pay a monthly fee, not to exceed monthly dues, to UTU. For those employees transferring to engine service before the date of the agreement, a failure to pay the fee would result in no further accumulation of train service seniority. For those transferring to engine service after the date of the agreement, the language of Rule 55 indicates that the employees' train service seniority would be terminated and their names would be removed from appropriate seniority lists if they fail to pay the required fee. Despite this language, the General Chairman of UTU, John W. Hales, states that UTU and CCP will not employ reduction or termination of seniority as provided in Rule 55. Instead, Hales asserts that the employee will not accumulate further seniority and will not lose already earned seniority.[2]

Plaintiffs claim Rule 55 violates Section 2 Third, Fourth, Fifth and Eleventh of the

RLA, 45 U.S.C. § 152, Third, Fourth, Fifth and Eleventh. The parties agree that the facts are essentially undisputed, thus the Court's task is made less complex. Because the parties have filed cross-motions, we must extend the required favorable inferences to each when viewing the other's motion. *Thomas v. Sullivan*, 801 F.Supp. 65, 67 (N.D.Ill.1992). In the end, we must determine whether either party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *McCarthy v. Kemper Life Ins. Cos.*, 924 F.2d 683, 687 (7th Cir.1991).

### *Section 2, Eleventh (c) and Dual Unionism* [3]

Plaintiffs argue that Rule 55 violates Section 2, Eleventh (c) by requiring employees to pay a fee or dues to UTU to continue to accrue seniority and effectively forcing them

United Transportation Union, and that shall be noted on the appropriate seniority rosters.

(b) Any employee who was promoted and/or transferred to another position from the craft or class represented by the United Transportation Union *subsequent* to the date of this Agreement may elect to retain and accumulate seniority within the craft or class represented by the United Transportation Union so long as he/she pays an appropriate monthly fee, not to exceed monthly union dues to the United Transportation Union. In the event such employee fails to pay such fee, the General Chairperson shall so notify the designated Carrier Officer with a copy to the employee involved. Such employee whose payments are delinquent shall have sixty (60) days from the date of the General Chairperson's letter to correct the delinquency. Failing to correct the delinquency, his/her seniority in the craft or class represented by the United Transportation Union shall be terminated and his/her name shall be removed from the appropriate seniority rosters.

2. For purposes of comparison, we note that the challenged side letter agreement in *Dempsey* provided in relevant part:

Ground service employees who have transferred or transfer to engine service will not continue to accumulate ground service seniority unless they satisfy the following condition. Full dues to the United Transportation Union will be required of such employees in order for them to continue accumulating ground service seniority.

Ground service employees failing to pay full monthly dues to the UTU after transferring to engine service, will not thereafter accumulate

any additional conductors, brakeman or yardman seniority, and thus will fall on any relevant conductors', trainmen's or yardmen's roster below such persons who do continue to accumulate such seniority.

3. Railway Labor Act Section 2, Eleventh (a), 45 U.S.C. § 152 Eleventh (a), provides in relevant part:

[A]ny carrier or carriers ... and a labor organization or labor organizations ... shall be permitted—

(a) to make agreements, requiring, as a condition of continued employment, that within sixty days following the beginning of such employment, or the effective date of such agreements, whichever is the later, all employees shall become members of the labor organization representing their craft or class. . . .

Section 2, Eleventh (c), 45 U.S.C. § 152 Eleventh (c), provides in pertinent part:

The requirement of membership in a labor organization in an agreement made pursuant to subparagraph (a) of this paragraph shall be satisfied, as to both a present or future employee engaged in engine, train, yard, or hostling service ... if said employee shall hold or acquire membership in any one of the labor organizations, national in scope, organized in accordance with this chapter and admitting to membership employees of a craft or class in any of said services. . . .

to join more than one union or change to UTU membership. The Seventh Circuit disposed of this argument in *Dempsey*. Section 2, Eleventh (c) only limits Section 2, Eleventh (a)'s general authorization of a union shop under the RLA. As the Seventh Circuit stated, "the prohibitions against dual unionism contained in Section 2, Eleventh (c) only kick in when the agreement at hand purports to be a union shop agreement made pursuant to Section 2, Eleventh (a)." *Dempsey*, 16 F.3d at 838. The central issue thus becomes whether Rule 55 conditions continued employment in the train service craft upon payment of fees or dues to UTU. *Id.*

■ Nothing on the face of Rule 55 establishes such conditions for those employees who were transferred or promoted to train service prior to the date of the agreement between CCP and UTU. As in *Dempsey*, these employees are simply required to pay the fees or dues if they wish to obtain an additional benefit, further accumulation of train service seniority. If such an employee decides not to pay UTU, he would still satisfy the union shop agreement as a member of BLE and could not be terminated for failure to comply with that provision. *Dempsey*, 16 F.3d at 838. Thus, as to paragraph (a) of the Seniority Retention clause, we find that it is not a union shop provision and thus is not violative of Section 2, Eleventh.

■ For those employees who make the transfer after the date of the agreement and fall under paragraph (b) of the Seniority Retention clause, closer examination is warranted. We must interpret Rule 55 as it is written, not as Hales contends it will be enforced. As such, the Court must determine whether the loss of already earned seniority for failure to pay UTU dues renders this portion of Rule 55 a union shop agreement subject to Section 2, Eleventh (c).

In *Dempsey*, the Seventh Circuit noted that the challenged provision did not "require payment of dues to UTU to preserve already-acquired seniority in train service." 16 F.3d at 838. We have that situation here. The Seventh Circuit has previously held that requiring transferred or promoted employees to maintain union membership in order to retain already earned seniority constitutes

impermissible discrimination under § 8(a)(3) of the NLRA. *N.L.R.B. v. Manitowoc Engineering Co.*, 909 F.2d 963, 969–71 (7th Cir. 1990), *cert. denied*, 498 U.S. 1083, 111 S.Ct. 954, 112 L.Ed.2d 1042 (1991). Throughout their argument Plaintiffs make numerous references to the NLRA but we find these analogies largely unhelpful. We must remind the reader that the Seventh Circuit quite explicitly refused to resort to the NLRA because of the ample case law under the RLA, at least for purposes of Section 2, Fourth. This Court is mindful of that refusal as well as the Supreme Court's continued emphasis that "the NLRA cannot be imported wholesale into the railway labor area." *Trans World Airlines, Inc. v. Indep. Fed'n of Flight Attendants*, 489 U.S. 426, 439, 109 S.Ct. 1225, 1233, 103 L.Ed.2d 456 (1989). The NLRA may offer helpful analogies but analogy should not be confused with binding precedent.

With that said, we must also acknowledge that paragraph (b) does not on its face condition continued employment in train service on payment of dues to UTU. On its face, this portion of Rule 55 conditions retention of seniority on payment of dues or fees and does not explicitly impose any condition of continued employment. As in *Dempsey*, we turn to whether the clause imposes a "de facto" condition of employment.

An employee who refuses to pay "shall" lose his seniority, but may or may not lose his job. The employee may continue to work in engine service positions and he may return to train service at a time when there are positions open even for those with no seniority. True, an employee who fails to pay the dues will be deleted from the seniority list and may return at a time when no positions are open in train service. The *Dempsey* court did not find the potential for future loss of employment sufficient to render the challenged provision in *Dempsey* a union shop agreement. Our task is to determine whether this case differs in such a way that *Dempsey* would not govern.

The situation here is more extreme than that before the *Dempsey* court. That fact does not render *Dempsey's* reasoning use-

less. In *Dempsey,* an employee who failed to pay fees to UTU would stop accruing seniority in train service and the employee would fall behind others who continued to gain seniority. Upon an employee's return to train service, the decline in his relative positive on the seniority list might result in no position for the employee to fill or too little seniority to "bump" another employee. In this case, employees falling under paragraph (b) will lose all seniority and thus we will assume the likelihood of their potential unemployment is greater, perhaps far greater.

▪ According to the Seventh Circuit, the *Dempsey* plaintiffs effectively sought a pronouncement that Section 2, Eleventh, provided some guaranteed right to continue accruing seniority. The Plaintiffs here make the same argument with the additional request that this Court find in Section 2, Eleventh, a guaranteed right to keep already accrued seniority. As explained in *Dempsey,* however, the RLA is not a guarantee of employment for life and employees have no vested right in the seniority created by the collective bargaining agreement between CCP and UTU. 16 F.3d at 839–40. Collective bargaining agreements and the seniority rights defined within them are contracts subject to revision, modification or abrogation. *Id.* To put it simply, seniority is not derived from union membership; rather it is a right derived from and limited by the collective bargaining agreement.

4. For the sake of completeness, we also reject the "cost-sharing" argument made by Plaintiffs for the same reasons set forth in *Dempsey.* The RLA simply does not attempt to make labor organizations financially secure through some sort of redistribution of membership dues. 16 F.3d at 840.

5. Railway Labor Act, Section 2, Third, 45 U.S.C. § 152 Third, provides in pertinent part:
   Representatives ... shall be designated by the respective parties without interference, influence, or coercion by either party over the designation of representatives by the other; and neither party shall in any way interfere with, influence, or coerce the other in its choice of representatives.
   Railway Labor Act, Section 2, Fourth, 45 U.S.C. § 152 Fourth states in pertinent part:
   No carrier, its officers or agents shall deny or in any way question the right of its employees

Under these circumstances, the *Dempsey* court found that Section 2, Eleventh (c) provides no guarantee that a transferred employee has the right to continue to accrue seniority in his old craft while working in another. *Id.* The Seventh Circuit acknowledged the temptation of continuing to accrue additional seniority might entice some BLE members to satisfy the union shop requirement by paying dues to UTU to avoid potential unemployment as others passed them on the train service seniority list. *Id.* at 840. Succumbing to temptation to obtain a benefit that increases employment security is not the same as being forced to do so as a condition of continued employment.

As we said above, the temptation here is more extreme and simply stated is pay UTU or lose all seniority and *perhaps* find yourself unemployed when you return to train service. The *Dempsey* plaintiffs made a similar "de facto" condition of employment argument to no avail. Though the argument is stated in starker terms here, we find no basis to distinguish it from *Dempsey.* Thus, this Court reaches the same conclusion as the Seventh Circuit and finds that Rule 55 and its Seniority Retention clauses are not union shop agreements and do not fall within the scope of Section 2, Eleventh.[4]

*Section 2, Third and Fourth* [5]

▪ In *Dempsey,* both the Seventh Circuit and the District Court found that plaintiffs had waived any argument under Section 2, Third and neither court addressed the issue.[6]

to join, organize, or assist in organizing the labor organization of their choice, and it shall be unlawful for any carrier to interfere in any way with the organization of its employees, ... or to influence or coerce employees in an effort to induce them to join or remain or not to join or remain members of any labor organization.

6. In this case, the Plaintiffs fail to mention Section 2, Fifth in their opening brief and make only passing reference to it in a later submission without citation to any authority. The Court finds that Plaintiffs have waived any argument under Section 2, Fifth. Moreover, it appears obvious that Plaintiffs were never required to sign any agreement or make any promise not to join or to join a union and thus Defendants did not violate Section 2, Fifth. The Seventh Circuit has narrowly construed the protection afforded by Section 2, Fifth and has declined to expand that protection beyond the express terms of that

We find that Section 2, Third and Fourth are so closely related that the disposition of the two claims follows one from the other in this case. Both Section 2, Third and Fourth have as their focus "the pre-certification rights and freedoms of unorganized employees." *Trans World*, 489 U.S. at 440, 109 S.Ct. at 1234; *National R.R. Passenger Corp. v. International Ass'n of Machinists & Aerospace Workers*, 915 F.2d 43, 51 (1st Cir.1990). As the *Dempsey* court explained, Section 2, Fourth's application to "post-certification" controversies is extremely limited and the RLA, itself, is wholly inexplicit as to scope of permissible "self-help" once parties have completed the RLA's dispute resolution process. 16 F.3d at 841. Under these circumstances, the courts have intervened only in the unusual case where the plaintiff can show that the employer's actions "strike a fundamental blow to union or employer activity and the collective bargaining process itself." *Trans World*, 489 U.S. at 442, 109 S.Ct. at 1235; *Dempsey*, 16 F.3d at 841. Whether Rule 55 strikes such a fundamental blow is now the question.

Defendants rely on the Chairman Hales' affidavit in which he explains that the accelerating transfer of train service employees to engine service has lead to continued expenditure of resources and funds to protect the train service seniority of employees working outside the craft. For example, approximately 23 of the CCP engine service employees retain train service seniority. Of the 120 active train service employees, over a quarter are working outside of that craft. According to Hales, "the 'seniority retention' agreement was sought in order to provide that train service employees working outside the craft, but whose seniority was protected by UTU agreements, would pay fair support to the UTU as [the] labor organization that was maintaining those agreements." In *Dempsey*, the Seventh Circuit found a similar statement sufficient evidence of the lack of

section. *Air Line Pilots Ass'n, Int'l v. United Air Lines, Inc.*, 802 F.2d 886, 914–15 (7th Cir.1986), *cert. denied*, 480 U.S. 946, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987). As a result, had we not found a waiver of this claim, existing precedent would dispose of it easily.

anti-union animus to place the burden on the opponent to put forward evidence of such animus. 16 F.3d at 842–43.

In addition, while we ignored Hales' statements regarding the application of paragraph (b) when deciding whether Rule 55 is a union shop agreement, we do consider them here on the question of CCP's and UTU's intent. According to Hales, CCP and UTU do not intend to enforce the more punitive aspects of Rule 55 which would result in the loss of accrued seniority for certain employees who fail to pay the required fee to UTU. While the Court wonders why the parties did not write or amend the provision as they now say they will enforce it, we consider Hales' statement as some evidence that Defendants are not conspiring to destroy or undermine BLE and have no intent to do so through application of Rule 55.

In contrast, the Court is unable to find any affirmative evidence of anti-union animus or inherently destructive activity cited by Plaintiffs. As in *Dempsey*, Plaintiffs spend much time arguing about the NLRA and little time supporting their Section 2, Fourth claim.[7] Plaintiffs do repeatedly contend that Rule 55 forces BLE members to pay additional dues to UTU or join UTU outright. The Court acknowledges the real temptation Rule 55 provides, but that is far from saying a *negotiated* provision that actually benefits one union, UTU, is inherently destructive of union or employer activity. The Plaintiffs offer no proof that either UTU or CCP intended or planned to undermine BLE as the bargaining representative for engine service workers. Instead, Defendants' focus appears to have been on their respective goals of reducing the crew consist and obtaining some financial support for UTU's efforts in administering train service labor agreements in the face of declining membership.

7. Although enforcement of paragraph (b) might constitute an unfair labor practice if the NLRA applied in this case, the Seventh Circuit has stated that "simply because a practice is deemed unlawful under the NLRA does not automatically translate into a finding that the same practice is unlawful under the RLA." *Air Line Pilots Ass'n*, 802 F.2d at 898.

As in *Dempsey,* we do not find the impact of Rule 55 as severe as some measures *unilaterally* adopted by employers targeting specific unions and upheld by courts. *Dempsey,* 16 F.3d at 842 (emphasis added); *see, e.g., Trans World,* 489 U.S. at 443, 109 S.Ct. at 1235–36 (airline's policy of retaining junior crossover strikers over full-term strikers upheld under Section 2, Fourth); *Renneisen v. American Airlines, Inc.* 990 F.2d 918, 924–25 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 303, 126 L.Ed.2d 251 (1993) (agreement between union and airline relinquishing wages and benefits for future pilots and preserving wages and benefits for current pilots held lawful under Section 2, Fourth); *International Ass'n of Machinists v. Alaska Airlines, Inc.,* 813 F.2d 1038, 1039 (9th Cir.), *cert. denied,* 484 U.S. 926, 108 S.Ct. 290, 98 L.Ed.2d 250 (1987) (airlines's recall plan that gave priority for new jobs to replacements and crossover strikers over full-term strikers upheld under Section 2, Fourth). *But see Ruby v. TACA International Airlines, S.A.,* 439 F.2d 1359, 1364 (5th Cir.1971) (air carrier's attempt to move base of pilots outside U.S. depriving union of legal representative status deemed violative of Section 2, Fourth). In sum, the Court does not find Defendants' adoption and application of Rule 55 in violation of Section 2, Fourth because it does not strike a fundamental blow to union or employer activity and was not motivated by anti-union animus.

## *CONCLUSION*

For the foregoing reasons, the Court grants the Defendants' motion for summary judgment and denies the Plaintiffs' motion for summary judgment.