Douglas T. WIGHTMAN, et al.

v.

**SPRINGFIELD TERMINAL RAILWAY COMPANY, United Transportation Union.**

Civ. A. No. 95–11143–RGS.

United States District Court,
D. Massachusetts.

Feb. 16, 1996.

Shelley B. Kroll, Segal, Roitman & Coleman, Boston, MA, Harold A. Ross, Ross & Kraushaar, Cleveland, OH, Michael S. Wolly, Zwerdling, Paul, Leibig, Kahn, Thompson & Wolly, P.C., Washington, DC, for Plaintiffs.

John R. Nadolny, North Billerica, MA, Springfield Terminal Railway Company.

James F. Freeley, III, Freeley & Freeley, Boston, MA, Norton N. Newborn, Cleveland, OH, for United Transportation Union.

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

STEARNS, District Judge.

The Brotherhood of Locomotive Engineers (BLE) and four of its members, Douglas Wightman, John Pollock, Daniel Barnett, and James Adams, brought this Complaint against a sister union, the United Transportation Union (UTU) and the unions' mutual employer, Springfield Terminal Railway Company. The Complaint alleges that Arti-

cle 21 of an April 2, 1995 collective bargaining agreement (CBA) between the UTU and Springfield Terminal violates four provisions of the Railway Labor Act (RLA), 45 U.S.C. § 151 et seq. The BLE represents workers employed as engineers by Springfield Terminal, while the UTU represents the train service craft which includes conductors, brakemen and trainmen. Both defendants have filed motions for summary judgment.[1] Plaintiffs, in part, oppose the motion.[2]

The undisputed material facts are as follows. Under the RLA, Springfield Terminal is a "carrier" and the BLE and the UTU are qualified organized labor representatives. As a condition of employment, workers at Springfield Terminal must be members of a national labor organization recognized by the RLA. Under Section 2 Eleventh (c) of the RLA (45 U.S.C. § 152) membership in either the BLE or UTU satisfies this requirement.

On April 2, 1995, Springfield Terminal and the UTU entered into a new CBA. Under Article 21 of that agreement,[3] employees working as engineers can pay dues either to the BLE, or to the UTU, or both. Engineers who pay the UTU's seniority maintenance fee (dues) continue to accrue seniority in the train service craft. Those who refuse forfeit any train service seniority accrued prior to their promotion to an engineer's position.

During negotiations with Springfield Terminal, the BLE was offered a seniority maintenance agreement similar to Article 21. The BLE rejected it.[4] On March 23, 1995, the BLE entered into a CBA with Springfield Terminal which contained a sideletter agreement allowing the BLE to continue to negotiate the seniority maintenance issue. The BLE contends that Article 21 of the UTU's agreement will inevitably deplete the ranks of BLE members and that to remain viable it will be forced to either raise the dues of its remaining members or to negotiate a seniority maintenance fee of its own with Springfield Terminal. Since the implementation of Article 21, two members of the BLE have resigned and joined the UTU.[5]

In Count III, plaintiffs contend that Article 21 violates Section 2 Eleventh (c) of the RLA. Subsection (c) is dependent on subsections (a) and (b) which authorize a carrier and labor organization:

(a) to make agreements, requiring, as a condition of continued employment, that within sixty days following the beginning

---

1. The parties had previously briefed all of the issues contained in the Complaint in response to plaintiffs' motion for a preliminary injunction which was denied by this court on June 30, 1995. The defendants have incorporated their briefs in opposition to the request for a preliminary injunction as part of their pleadings on summary judgment.

2. Plaintiffs in their Amended Complaint brought four counts against each defendant. Count I alleges that the defendants violated Section 2 First, of the RLA by excluding the BLE from the negotiations of Article 21. Count IV alleges that the defendants' conduct during these negotiations violated the duty of fair representation. Plaintiffs have not presented any argument in support of Counts I and IV in their opposition to the summary judgment motions. At oral argument, plaintiffs contended, however, that these causes of action are still viable. While plaintiffs have not complied with the letter of Local Rule 7.1(B)(2), I have reconsidered the plaintiffs' original arguments on these two counts and remain unpersuaded for essentially the reasons set out in the June 30, 1995 Order denying plaintiffs' motion for a preliminary injunction.

3. Article 21 states:

Trainmen who accepted Official Positions with the Carrier or accepted promotion to work in a craft other than Trainman after December 31, 1985 will continue to retain train service seniority provided they pay dues to the United Transportation Union. Those who accepted Official Positions or promotion prior to December 31, 1985 will not be affected by this Article.

4. The BLE did not dispute this fact during oral argument.

5. Some of the facts that plaintiffs contend are undisputed are not recounted here as they are immaterial to the dispute. Plaintiffs apparently believe these facts are material to the issue whether Springfield Terminal and the UTU harbor an anti-BLE animus. For example, plaintiffs assert that the court can infer an anti-BLE animus from the fact that Springfield Terminal and the UTU did not disclose the existence of Article 21 until after the BLE negotiated its CBA. Drawing all inferences in plaintiffs' favor, the inference of animus towards the BLE is contradicted by the undisputed fact that Springfield Terminal made an equivalent offer to the BLE which was rejected.

of such employment, or the effective date of such agreements, whichever is the later, all employees shall become members of the labor organization representing their craft or class . . .

(b) to make agreements providing for the deduction by such carrier or carriers from the wages of its or their employees in a craft or class and payment to the labor organization representing the craft or class of such employees, of any periodic dues, initiation fees, and assessments (not including fines and penalties) uniformly required as a condition of acquiring or retaining membership. . . .

45 U.S.C. § 152 Eleventh (a) & (b).

Congress added subsection (c) to Section 2 Eleventh to prohibit carriers and unions from requiring membership in more than one union as a precondition for an employee's movement among railroad crafts. Subsection (c) states that:

[t]he requirement of membership in a labor organization in an agreement made pursuant to subparagraph (a) of this paragraph shall be satisfied, as to both a present or future employee in engine, train, yard, or hostling service . . . if said employee shall hold or acquire membership in any one of the labor organizations, national in scope, organized in accordance with this chapter and admitting to membership employees of a craft or class in any of said services; and no agreement made pursuant to subparagraph (b) shall provide for deductions from his wages for periodic dues, initiation fees, or assessments payable to any labor organization other than that in which he holds membership. . . . *Provided, further*, That nothing herein or in any such agreement or agreements shall prevent an employee from changing membership from one organization to another organization admitting to membership employees of a craft or class in any of said services.

■ Plaintiffs argue in essence that the punitive terms of Article 21, which strips BLE members of their previously earned train craft seniority status, compel railroad workers either to belong to both unions, or to opt for membership in the UTU.[6] While plaintiffs acknowledge that Article 21 does not on its face condition continued employment on dual union membership, they argue that Article 21, in effect, mandates that result because a trainman given a "forced" promotion to an engineer's position might otherwise find himself unemployed if he is subsequently demoted or transferred back to the train service craft.

As noted in this court's opinion denying plaintiffs' motion for a preliminary injunction, this claim has been litigated and decided adversely to the BLE by the Seventh and Eighth Circuit Courts of Appeals in almost identical fact situations. See *Dempsey v. Atchison, Topeka and Santa Fe Railway Co.*, 16 F.3d 832 (7th Cir.1994) and *Brotherhood of Locomotive Engineers v. Kansas City Southern Railway Co.*, 26 F.3d 787 (8th Cir. 1994).

Plaintiffs argue that these cases are distinguishable because under the agreements litigated in *Dempsey* and *Kansas City Southern*, engineers who refused to pay dues to the UTU were permitted to retain their train service craft seniority (although losing accrual rights). Article 21, by contrast, extinguishes all seniority rights for members of the train service craft who accept positions as engineers and refuse to pay UTU dues.

This distinction, however, does not impeach the underlying analysis. Section Two Eleventh (c) prohibits compelled membership in two unions as a condition of employment. Nothing in Article 21 requires a railway worker to pay dues to the UTU to keep an engineer's job. Membership in either the BLE or UTU satisfies the RLA's requirement of union membership. Article 21 simply makes it more attractive for an engineer who has little seniority in that craft to join the UTU as a short term hedge in the event that a demotion or reduction in force requires him to return to the train service craft. As the Eighth Circuit observed in

---

**6.** UTU dues are currently $48.00 a month; those of the BLE $56.00. BLE argues that there is a "strong financial incentive" for workers to pay dues to the UTU and become "free riders" as to the BLE.

*Kansas City Southern*, "the [Railway Labor Act] does not prohibit a union representing one craft from negotiating terms with the employer that may render membership in that union more attractive to some employees than membership in another union for which those employees may be eligible." 26 F.3d at 793.

■ Article 21 does not require that an employee chose between dual membership or unemployment. The choice put to an engineer is whether he wants to continue accruing seniority in the train service craft. If he does, he has to pay UTU dues for the privilege, which is itself unremarkable. He may not be compelled to do so as a condition of continued employment. But that is as far as the RLA goes. The Act grants no entitlement to accrued seniority. "[B]arring some legislative pronouncement to the contrary, seniority rights [only] arise out of the collective bargaining agreement entered into between the employer and the union." *Dempsey*, 16 F.3d at 839. Thus, summary judgment will be granted in the defendants' favor as to Count III.

■ Plaintiffs argue in Count II of their Amended Complaint that Article 21 violates Section 2 Third and Section 2 Fourth of the RLA. Section 2 Third states in pertinent part that no party "shall in any way interfere with, influence or coerce" the rail employer or its employees in their choice of representation. Section 2 Fourth further states that

[i]t shall be unlawful for any carrier to interfere in any way with the organization of its employees, or to use the funds of the carrier in maintaining or assisting or contributing to any labor organization, labor representative, or other agency of collective bargaining, or in performing any work therefor, or to influence or coerce employees in an effort to induce them to join or remain or not to join or remain members of any labor organization, or to deduct from the wages of employees any dues,

fees, assessments, or other contributions payable to labor organizations, or to collect or to assist in the collection of any such dues, fees assessments, or other contributions....[7]

As the First Circuit Court of Appeals has aptly stated:

[i]n a post-certification controversy such as the one here, judicial intervention under Section 2 Third and Fourth is limited to circumstances where "the employer's conduct has 'been motivated by anti-union animus or ... an attempt to interfere with its employees' choice of their collective bargaining representative,' *Tello v. Soo Line R.R.*, 772 F.2d 458, 462 (8th Cir.1985), or constitutes 'discrimination or coercion' against that representative, *International Brotherhood of Teamsters v. Pan American World Airways*, 607 F.Supp. 609, 614 n. 5 (E.D.N.Y.1985) or involves 'acts of intimidation [which] cannot be remedied by administrative means,' *Local Union 808 v. P & W Railroad Co.*, 576 F.Supp. 693, 703 (D.Conn.1983)".... Judicial intervention would also be permitted under Section 2 Third and Fourth if the employer engaged in a 'fundamental attack on the collective bargaining process,' or a 'direct attempt to destroy a union.' *See International Association of Machinists and Aerospace Workers, AFL–CIO v. Alaska Airlines, Inc.*, 813 F.2d 1038, 1040 (9th Cir.1987), cert. denied, 484 U.S. 926, 108 S.Ct. 290, 98 L.Ed.2d 250.

*National R.R. Passenger Corp. v. IAMAW*, 915 F.2d 43, 51 (1st Cir.1990).

Plaintiffs argue that the UTU's and Springfield Terminal's agreement exhibits an anti-union animus satisfying the First Circuit's test. Plaintiffs point to six facts allegedly supporting this contention which can be distilled into three claims: (1) that the defendants' conduct during the period 1986 to 1990 constituted a concerted attempt to deny BLE its representation rights; (2) that Article 21 is deliberately intended to drive employees

---

**7.** Plaintiffs also argue that two of the "purposes clauses" of the RLA, 45 U.S.C. § 151a(2) & (3), invalidate the reach of Article 21. Subsection (2) specifically "forbid[s] any limitation upon freedom of association among employees or any denial, as a condition of employment or otherwise,

of the right of employees to join a labor organization." Subsection (3) mandates "the complete independence of carriers and of employees on the matter of self-organization to carry out the purposes of this chapter." Article 21 impinges on neither purpose.

out of the BLE; and (3) that Springfield Terminal concealed the existence of Article 21 as a means of deceiving the BLE into ratifying a less advantageous contract.

The history of antagonism and sharp bargaining cited by the BLE does not without more demonstrate that Article 21 was implemented by Springfield Terminal because of an anti-BLE animus. The BLE claims that the extinguishment of its members' seniority rights by the UTU is so oppressive that it will force employees to leave the BLE thereby destroying the organization. Even if this is true,[8] it only underscores the ferocity of the rivalry between the BLE and the UTU. In *Carr v. Chicago, Central & Pacific Railroad,* 853 F.Supp. 282, 288 (N.D.Ill.1994), a factually identical case, "[t]he Court acknowledge[d] the real temptation [the UTU's seniority maintenance provision] provides, but this is far from saying a *negotiated* provision that actually benefits one union, UTU, is inherently destructive of union or employer activity. The Plaintiffs offer no proof that either UTU or [the railroad] intended or planned to undermine BLE as the bargaining representative for engineer service workers."[9] Because no such showing is made here as well, summary judgment will be granted on Count III in defendants' favor.

### ORDER

For the foregoing reasons, the defendants' motions for summary judgment are *AL-LOWED.*

SO ORDERED.

---

**8.** It is undisputed that only two members have left the BLE since Article 21 was implemented.

**9.** It is true, as plaintiffs point out, that in *Carr,* the UTU, having won an agreement similar to Article 21, promised not to enforce it. While the Court found this promise "some evidence that defendants are not conspiring to destroy or un-

dermine BLE and have no intent to do so through application of [the agreement]," this was not a decisive consideration. Indeed, "the Court wonder[ed] why the parties did not write or amend the provision as they now say they will enforce it...." 853 F.Supp. at 288.